IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| HOUSTON INTERNATIONAL INSURANCE GROUP, LTD., *INDIVIDUALLY AND AS A TRANSFEREE/ASSIGNEE OF* THE CLEARWATER COMPANY, INC. N/K/A CLEARWATER ASSOCIATES, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE CINCINNATI INSURANCE COMPANY, <br><br> Defendant. | CIVIL ACTION NO: 3:18-cv-03148-MGL <br><br><br> **COMPLAINT** |

## FACTS

1.     Houston International Insurance Group, Ltd. ("HIIG") is a corporation organized and existing under the laws of Delaware, with its principal place of business in Texas.

2.     Upon information and belief, the Cincinnati Insurance Company ("Defendant") is a corporation organized and existing under the laws of Ohio, with its principal place of business in Ohio.  Defendant engages in the business of insurance in the state of South Carolina, and has transacted insurance business in the State of South Carolina and within the geographical jurisdiction of the United States District Court for the District of South Carolina.

3.     On February 25, 2013, the Clearwater Company, Inc. n/k/a Clearwater Associates, Inc. ("AI Clearwater") entered into an agreement ("the Prime Contract") with the Town of Irmo to serve as the general contractor for the Irmo Community Park project located at 7507 Eastview Drive in Irmo, South Carolina ("the Project").

4.     On or around March 4, 2013, AI Clearwater entered into a subcontract ("the Subcontractor Agreement") with CBG, Inc. ("Subcontractor CBG") whereby Subcontractor CBG agreed to "FURNISH MATERIAL, LABOR, INSURANCE AND TAXES" necessary to

perform "ALL SITEWORK . . . INCLUDING SIDEWALKS" required for the Project in a manner that conformed with all applicable specifications and regulations. (Ex. A, Subcontractor Agreement, at CBG 000011, Article 8.)

5.     Under the Subcontractor Agreement, CBG was required to purchase and maintain liability insurance "as will protect [it] from claims that may arise out of, or result from, [its] operations and completed operations under the Subcontract[or] Agreement." (*Id.* at CBG 000014, §13.1.)

6.     Additionally, Subcontractor CBG was required to cause its commercial liability coverage to include AI Clearwater:

    a.  "as [an] additional insured[] for claims caused in whole or in part by [] Subcontractor[ CBG]'s negligent acts or omissions during [] Subcontractor[ CBG]'s operations;" and,

    b.  "as an additional insured for claims caused in whole or in part by [] Subcontractor[ CBG]'s negligent acts or omissions during [] Subcontractor[ CBG]'s completed operations."

(*Id.* at § 13.4.)

7.     On or around June 12, 2013, after contractually agreeing under the then-currently effective Subcontractor Agreement to purchase and maintain commercial liability coverage that would protect itself and AI Clearwater as an additional insured, Subcontractor CBG obtained a written contract of insurance from Defendant, policy number CPP 082 80 07 ("the Cincinnati Policy"), with a policy period spanning from June 12, 2013 until June 12, 2014. (*See* Ex. B, The Cincinnati Policy, at GA 501 10 01.)

8.     The Cincinnati Policy defines "insured" to mean "any person or organization qualifying as such under **SECTION II – WHO IS AN INSURED**." (*Id.* at GA 101 12 04, Page 1 of 23.)

9.     In accordance with the requirements of the Subcontractor Agreement, Subcontractor CBG obtained a **CONTRACTORS' COMMERCIAL GENERAL LIABILITY BROADENED ENDORSEMENT** ("the CGL Broadened Endorsement") to the Cincinnati Policy which, among other things, added AI Clearwater as an "**Automatic Additional Insured**" with rights to defense and indemnity coverage under the Cincinnati Policy.  (*See id.* at GA 233 02 07 at Pages 10-14 of 15.)   Specifically, under relevant portions of Paragraph **C.9.**, "**Automatic Additional Insured – Specified Relationships**", of the CGL Broadened Endorsement:

a.   The following is hereby added to **SECTION II – WHO IS AN INSURED**:

1)   Any person or organization described in Paragraph **9.a.(2)** below (hereinafter referred to as additional insured) whom you are required to add as an additional insured under this Coverage Part by reason of:

(a)  A written contract or agreement

. . .

is an insured, provided:

(a)  The written or oral contract or agreement is:

1)   Currently in effect or becomes effective during the policy period; and
2)   Executed prior to an "occurrence" or offense to which this insurance would apply; and

(b)  They are not specifically named as an additional insured under any other provision of, or endorsement added to, this Coverage Part.

2)   Only the following persons or organizations are additional insureds under this endorsement, and insurance coverage provided to such additional insureds is limited as provided herein:

. . .

(f)  Any person or organization with which you have agreed per Paragraph **9.a.(1)** above to provide insurance, but only with respect to liability arising out of "your work" performed for that additional

insured by you or on your behalf.  A person or organization's status as an insured under this provision of this endorsement continues for only the period of time required by the written contract or agreement, but in no event beyond the expiration date of this Coverage Part.  If there is no written contract or agreement, or if no period of time is required by the written contract or agreement, a person or organization's status as an insured under this endorsement ends when your operations for that insured are completed.

   3) Any insurance provided to an additional insured designated under Paragraph **9.a.(2)**:

     (a) Subparagraph[] . . . **(f)** does not apply to "bodily injury" or "property damage" included within the "products-completed operations hazard";

     . . .

b. Only with regard to insurance provided to an additional insured designated under Paragraph **9.a.(2)** Subparagraph **(f)** above, **SECTION III – LIMITS OF INSURANCE** is amended to include:

The limits applicable to the additional insured are those specified in the written contract or agreement or in the Declarations of this Coverage Part, whichever are less.  If no limits are specified in the written contract or agreement, or if there is no written contract or agreement, the limits applicable to the additional insured are those specified in the Declarations of this Coverage Part.  The limits of insurance are inclusive of and not in addition to the limits of insurance shown in the Declarations.

c. **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS** is hereby amended as follows:

   . . .

   (2) Condition **11. Conformance to Specific Written Agreement** is hereby added:

     11. **Conformance to Specific Written Contract or Agreement**
     With respect to additional insureds described in Paragraph **9.a.(2)(f)** above only:

     If a written contract or agreement between you and the additional insured specifies that coverage for the additional insured:

     . . .

> **b.**     Include coverage for completed operations; or
> **c.**     Include coverage for "your work";
>
> and where the limits or coverage provided to the additional insured is more restrictive that was specifically required in that written contract or agreement, the terms of Paragraphs **9.a.(3)(a)** [] or **9.b.** above, or any combination thereof, shall be interpreted as providing the limits or coverage required by the terms of the written contract or agreement, but only to the extent that such limits or coverage is included with the terms of the Coverage Part to which this endorsement is attached. . . .

(*Id.*)

**10.**     The Cincinnati Policy included commercial general liability limits of $1,000,000 for each occurrence and $2,000,000 in general and products-completed operations aggregates. (*See id.* at GA 501 10 01.)

**11.**     Subsequently, on or around April 8, 2014, HIIG and AI Clearwater entered into a contract of insurance, policy number TEN-13905 ("the HIIG Policy"), with a policy period spanning from April 8, 2014 until April 8, 2015.[1]  (*See* Ex. C., The HIIG Policy, at HSIC IL DS 00 09 08 11 12, Page 1 of 2.)

**12.**     The Irmo Community Park ("the Park") was opened to the public on or around May 3, 2014.

**13.**     Shortly thereafter, on May 31, 2014, during the active coverage period of the Cincinnati Policy, three year-old Jacoby Latta was allegedly playing with his church group on the playground of the Park, when a large limb broke off a tree and violently struck Jacoby in the head, resulting in severe lacerations to his head, a fractured skull, and traumatic brain injuries.

**14.**     On June 9, 2015, Stuart Latta and Xaviera Latta, *individually and as co-personal representatives of the Estate of Jacoby Stuart Latta and as guardian ad litems for the minor, Josie Latta* (collectively, "the Underlying Plaintiffs"), filed a lawsuit against AI Clearwater and

---

[1] The HIIG Policy contained a "**LIABILITY DEDUCTIBLE ENDORSEMENT**" for a $1,000 deductible "Per Occurrence."  (Ex. C at TEN 0088 01 14, Page 1 of 2.)

certain other defendants in the South Carolina Court of Common Pleas, Fifth Judicial Circuit, County of Richland, with Case No. 2015-CP-40-03407 ("the Underlying Lawsuit").

15.     The Underlying Lawsuit arose out of the allegedly negligent construction of the Park and was filed pursuant to the survival statute, S.C. Code Ann. § 15-5-90, and the wrongful death statute, S.C. Code Ann. § 15-51-10.

16.     On June 10, 2015, the Underlying Plaintiffs filed an Amended Complaint ("the Underlying Amended Complaint") in the Underlying Lawsuit alleging that "[AI] Clearwater was the general contractor for the park, including the playground."  (Ex. D, The Underlying Amended Complaint, at 3, ¶18.)

17.     The Underlying Amended Complaint further alleged that "[i]n constructing the park and installing a playground and walkways, the Defendants owed a duty to persons who may be using the park, including Jacoby, to discover, identify, report, and remove overhanging dead limbs and timber that posed a threat or danger to persons on or near the park and specifically the park playground and the walkways."  (*Id.* at 3-4, ¶20.)

18.     As it relates to Subcontractor CBG's scope of work, the Underlying Amended Complaint further alleged that the defendants were negligent, grossly negligent, reckless, or willful and wanton in, *inter alia*:

> a.  "Ignoring clearly visible dead trees, limbs, and branches during the . . . construction of the Park and playground;"
>
> b.  "Preparing the site for and installing the playground without removing dangerous items from the site, such as dead limbs and branches that overhung the play area;" and,
>
> c.  "Failing to ensure that the area above the playground was clear of dead limbs and branches with the knowledge that small children would be on the playground."
>
> (*Id.* at 5-6, 8, ¶¶ 30.f., j., 37.e.)

19.     The Underlying Amended Complaint further alleged that these purported acts of negligence were a "proximate cause of Jacoby's death and the injuries and damages sustained by

the [Underlying] Plaintiffs" and that the "[Underlying] Plaintiffs suffered substantial damages as a result of Defendants' negligence." (*Id.* at 5-7, ¶¶ 30, 34.)

20.     Pursuant to the terms of the Subcontractor Agreement and the Cincinnati Policy, former counsel for AI Clearwater, John Blincow, Jr. ("Former Counsel for AI Clearwater") sent a letter ("Claim Tender Letter") to Subcontractor CBG on November 11, 2015, "to demand that CBG's carrier [*i.e.*, Defendant] provide a defense and coverage to [AI Clearwater] in [the Underlying Lawsuit]". (Ex. E, Claim Tender Letter.)

21.     In his Claim Tender Letter, Former Counsel for AI Clearwater asked Subcontractor CBG to "[p]lease have your carrier [*i.e.*, Defendant] contact me so that we can [make] arrangements to turn over the defense of [AI] Clearwater." (*Id.*)

22.     A copy of the complaint from the Underlying Lawsuit was enclosed with the Claim Tender Letter. (*See, e.g.*, *id.*)

23.     Upon receipt of the Claim Tender Letter, Subcontractor CBG contacted Defendant's Field Claims Superintendent, Locke Doty, AIC ("Defendant's Claims Superintendent") who was supposed to handle and investigate AI Clearwater's additional insured claim tender.

24.     On or around November 27, 2015, Defendant's Claims Superintendent sent a letter ("Notice of Investigation") to Former Counsel for AI Clearwater acknowledging receipt of AI Clearwater's Claim Tender Letter and its "request for Defense and Coverage." (Ex. F, Notice of Investigation.)

25.     In its Notice of Investigation, Defendant assured AI Clearwater that it was "currently investigating this claim" but that it was "not able to either accept or reject the Claim Tender at this time." (*Id.*)

26.     Defendant also requested in its Notice of Investigation that AI Clearwater provide Defendant with "copies of all claim related documents in your possession" to "include a copy of a Subcontractor Agreement that you referenced in your 11/11/15 [Claim Tender L]etter" as "[t]he documentation will assist us in our investigation of the claim." (*Id.*)

27.    On December 10, 2015, Former Counsel for AI Clearwater sent a letter ("Follow-Up Letter #1") written in response to Defendant's Notice of Investigation.  (*See* Ex. G, Follow-Up Letter #1.)

28.    For ease of reference, Former Counsel for AI Clearwater attached a copy of Defendant's Notice of Investigation to Follow-Up Letter #1.  (*See id.*)

29.    Importantly, in Follow-Up Letter #1, Former Counsel for AI Clearwater "[e]nclosed [] a CD of documents which represents a copy of [AI] Clearwater's project file" and specifically requested that Defendant "[p]lease let me know if you need anything further."[2]  (*Id.*)

30.    On February 11, 2016, having received no response to AI Clearwater's Follow-Up Letter #1, Former Counsel for AI Clearwater sent another letter ("Follow-Up Letter #2") to Defendant's Claims Superintendent seeking an update regarding AI Clearwater's demand for defense and indemnity under the Cincinnati Policy.  (Ex. H, Follow-Up Letter #2.)

31.    In Follow-Up Letter #2, Former Counsel for AI Clearwater asked that Defendant "*[p]lease let [him] have Cincinnati Insurance Company's decision by February 19th [2016]*" but again stressed that "[i]f you need anything further in the meantime please let me know."  (*Id.*) (emphasis added).

32.    Although Defendant understood that it must give a final evaluation of the claim in the normal course of proper claims work business, Defendant never responded to AI Clearwater's Follow-Up Letters #s 1-2, never gave AI Clearwater a decision on—nor an evaluation of—the claim set forth in the Claim Tender Letter, never provided AI Clearwater with any reasons for refusing to accept its claim for coverage, and never provided a defense to AI Clearwater in the Underlying Lawsuit.

33.    Because Defendant never responded with an evaluation of AI Clearwater's additional insured claim, as of February 19, 2016—the date by which Former Counsel for AI Clearwater had requested a coverage decision—Defendant had, upon information and belief,

_____

[2] In an affidavit filed in the Underlying Lawsuit on June 1, 2016, Defendant's Claims Superintendent admitted that she received "the requested documents" from Former Counsel for AI Clearwater.

constructively and wrongfully denied AI Clearwater's claim for defense and indemnity under the Cincinnati Policy.

34.     As of February 24, 2016, more than three (3) months after the Claim Tender Letter was originally sent and five (5) days after the date by which a coverage decision was requested, Defendant had still failed to respond with a decision on AI Clearwater's claim for coverage.

35.     On that same date, and as a result of Defendant's refusal to provide coverage to AI Clearwater as an additional insured and Defendant's further refusal to protect Subcontractor CBG as its Named Insured, Former Counsel for AI Clearwater was forced to file several independent claims seeking recovery directly from Subcontractor CBG in the Underlying Lawsuit.

36.     As a further result of Defendant's refusal to provide additional insured coverage to AI Clearwater, which necessitated the filing of AI Clearwater's independent theories of recovery against Subcontractor CBG, AI Clearwater has subsequently been exposed to counter-claims filed against it by Subcontractor CBG in the Underlying Lawsuit.

37.     As a further result of Defendant's constructive denial of additional insured coverage to AI Clearwater, all attorneys' fees and costs of AI Clearwater in the Underlying Lawsuit were and are still being paid by Plaintiff on behalf of AI Clearwater and HIIG.

38.     As a further result of Defendant's constructive denial of additional insured coverage to AI Clearwater, on or around May 25, 2017, $700,000 was paid by Plaintiff on behalf of AI Clearwater and HIIG to settle the Underlying Lawsuit against AI Clearwater.

39.     As a further result of Defendant's constructive denial of additional insured coverage to AI Clearwater, Plaintiff has incurred and will continue to incur attorneys' fees and costs in investigating and filing the current action to recover sums paid by or on behalf of AI Clearwater and HIIG that lawfully should have been paid by Defendant.

40.     Pursuant to the foregoing, AI Clearwater's rights to recover all or part of any payment HIIG has made under the HIIG Policy have been transferred and assigned to Plaintiff.

**JURISDICTION**

41.     Plaintiff reaffirms and reiterates all of the allegations in the foregoing paragraphs as if fully repeated and incorporated herein.

42.     Subject matter jurisdiction is proper under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and Defendant, and the amount in controversy exceeds the sum of $75,000, exclusive of costs and interests.

43.     This Court has personal jurisdiction over Defendant in this matter.

44.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events, omissions and/or property giving rise to the claims at issue occurred in this District.

**STATEMENT OF CLAIMS AGAINST DEFENDANT[3]**

**FOR A FIRST CAUSE OF ACTION ON BEHALF OF PLAINTIFF**
(DECLARATORY JUDGMENT UNDER 28 USC § 2201)

45.     Plaintiff reaffirms and reiterates all of the allegations in the foregoing paragraphs as if fully repeated and incorporated herein.

46.     An actual controversy within the meaning of 28 U.S.C. § 2201 exists between the parties in that Plaintiff contends that Defendant had a duty to defend and indemnify AI Clearwater in the Underlying Lawsuit, that Defendant constructively declined and refused to defend or indemnify AI Clearwater, and that Plaintiff has been forced to defend and indemnify AI Clearwater and incur expenses as a result of Defendant's breach of its obligations to AI Clearwater.

47.     This case is properly brought within the jurisdiction of this Court under USC § 1332(a).

48.     Pursuant to the provisions of the Subcontractor Agreement and the Cincinnati Policy, AI Clearwater was and is an **"AUTOMATIC ADDITIONAL INSURED"** under the Cincinnati Policy issued by the Defendant.

---

[3] The claims against Defendant are stated cumulatively and/or in the alternative.

49.     Upon information and belief, and at all times relevant hereto, the Cincinnati Policy was in full force and effect and all premium payments were current and provided liability insurance to AI Clearwater for the alleged occurrence of May 31, 2014 which was the subject of the Underlying Lawsuit filed on June 9, 2015.

50.     The Underlying Lawsuit against AI Clearwater asserted claims allegedly caused by negligent acts or omissions in the performance of Subcontractor CBG's scope of work on the Project.

51.     By operation of the CGL Broadened Endorsement in the Cincinnati Policy in conjunction with the additional insured requirements of the Subcontractor Agreement, Defendant was the primary, non-contributory insurer and HIIG was the excess insurer to AI Clearwater with respect to the allegations of the Underlying Lawsuit:

    a.    Under the Cincinnati Policy, the insurance provided by the attached CGL Broadened Endorsement is primary to other insurance available to the additional insured except when certain conditions apply—none of which apply here:

        1)    As otherwise provided in **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, 5. Other Insurance, b. Excess Insurance**; or

        2)    For any other valid and collectible insurance available to the additional insured as an additional insured by attachment of an endorsement to another insurance policy that is written on an excess basis.

    (Ex. B at GA 233 02 07, Page 13 of 15, Section C - 9.c.(b).)

    b.    On the other hand, the HIIG Policy "is excess over: . . . [a]ny other primary insurance available to [AI Clearwater] covering liability for damages arising out of the premises or operations, or the products and completed operations, for which [it] ha[s] been added as an additional insured by attachment of an endorsement." (Ex. C at CG 00 01 12 07, Page 11 of 16, Section IV – 4.b.(1)(b).)

52.     As the sole primary insurer, Defendant had the primary duty to defend and indemnify AI Clearwater in the Underlying Lawsuit:

    a.    Specifically, when the Cincinnati insurance is primary, "[Defendant] will pay those sums that [AI Clearwater] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which [the Cincinnati Policy] applies.  We will have the right and duty to defend the insured against any 'suit'

seeking those damages."  (Ex. B at GA 101 12 04, Page 1 of 23, Section I – Coverage A. – 1.)

b. On the other hand, "[w]hen [the HIIG] insurance is excess, [HIIG] will have no duty under Coverages **A** or **B** to defend the insured against any 'suit' if any other insurer has a duty to defend the insured against that 'suit'."  (Ex. C at CG 00 01 12 07, Page 11 of 16, Section IV – 4.b.(2).)

53.    *In the alternative*, to the extent that HIIG was not the excess insurer and that Defendant was not the sole primary insurer to AI Clearwater with respect to the allegations of the Underlying Lawsuit, then HIIG and Defendant were co-primary insurers of AI Clearwater who shared the primary duty to defend and indemnify AI Clearwater in the Underlying Lawsuit.

54.    Defendant wrongfully refused to defend and indemnify AI Clearwater in the Underlying Lawsuit.

55.    As a result of Defendant's refusal to defend and indemnify AI Clearwater, on or around May 25, 2017, $700,000 was paid by Plaintiff on behalf of HIIG and AI Clearwater to settle the Underlying Lawsuit against AI Clearwater.

56.    Furthermore, all attorneys' fees and costs of AI Clearwater in the Underlying Lawsuit were and are still being paid by Plaintiff on behalf of HIIG and AI Clearwater.

57.    Plaintiff hereby seeks a declaration under 28 USC § 2201 that AI Clearwater was an additional insured under the Cincinnati Policy.

58.    Plaintiff also seeks a declaration under 28 USC § 2201 and under the Cincinnati Policy that:

a. With respect to the allegations of the Underlying Lawsuit, Defendant was the primary, non-contributing insurer to AI Clearwater with the primary duty to defend and indemnify, while HIIG was the excess insurer to AI Clearwater;

b. The Cincinnati Policy imposed and imposes on Defendant a duty to defend suits against its additional insureds seeking damages for bodily injury caused by an occurrence during the Cincinnati Policy period;

c. The Underlying Lawsuit alleged damages against AI Clearwater for bodily injury during the Cincinnati Policy period caused by an occurrence and for liability arising out of Subcontractor CBG's covered operations under the Cincinnati Policy;

d.  The allegations of the Underlying Lawsuit triggered Defendant's duty to defend and indemnify AI Clearwater under the Cincinnati Policy;

e.  Defendant was and is primarily responsible for the amounts paid or being paid by Plaintiff on behalf of HIIG and AI Clearwater to defend, settle, and indemnify the Underlying Lawsuit against AI Clearwater;

f.  Defendant wrongfully refused to assume the defense and indemnity of AI Clearwater; and

g.  Therefore, because Plaintiff dropped down in good faith to assume the defense and indemnity of AI Clearwater, Defendant must now reimburse Plaintiff for the monies paid by Plaintiff to settle the Underlying Lawsuit against AI Clearwater, as well as all reasonable attorneys' fees that have been and are still being incurred on behalf of HIIG and AI Clearwater in the Underlying Lawsuit and in bringing this action.[4]

59.  *In the alternative,* Plaintiff seeks a declaration under 28 USC § 2201 and under the Cincinnati Policy that:

a.  With respect to the allegations of the Underlying Lawsuit, Defendant and HIIG were co-primary insurers to AI Clearwater with co-primary duties to defend and indemnify with respect to the allegations of the Underlying Lawsuit;

b.  The Cincinnati Policy imposed and imposes on Defendant a duty to defend suits against its additional insureds seeking damages for bodily injury caused by an occurrence during the Cincinnati Policy period;

c.  The Underlying Lawsuit alleged damages against AI Clearwater for bodily injury during the Cincinnati Policy period caused by an occurrence and for liability arising out of Subcontractor CBG's covered operations under the Cincinnati Policy;

d.  The allegations of the Underlying Lawsuit triggered Defendant's duty to defend and indemnify AI Clearwater under the Cincinnati Policy;

e.  Defendant was and is responsible for a respective share of the amounts paid or being paid by Plaintiff to defend, settle, and indemnify the Underlying Lawsuit against AI Clearwater;

f.  Defendant wrongfully refused to join the defense and indemnity of AI Clearwater; and

---

[4] Pursuant to the HIIG Policy, "[i]f no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers."  (Ex. C at CG 00 01 12 07, Page 11 of 16, Section IV – 4.b.(2).)

g.  Therefore, because only Plaintiff assumed the defense and indemnity of AI Clearwater, Defendant must now reimburse Plaintiff for its respective share of the monies paid by Plaintiff to settle the Underlying Lawsuit against AI Clearwater, as well as all reasonable attorneys' fees that have been and are being incurred on behalf of AI Clearwater in the Underlying Lawsuit and in bringing this action.[5]

### FOR A SECOND CAUSE OF ACTION ON BEHALF OF HIIG *INDIVIDUALLY* (EQUITABLE SUBROGATION)

**60.**     Plaintiff reaffirms and reiterates all of the allegations in the foregoing paragraphs as if fully repeated and incorporated herein.

**61.**     Pursuant to the provisions of the Subcontractor Agreement and the Cincinnati Policy, AI Clearwater was an **"AUTOMATIC ADDITIONAL INSURED"** under the Cincinnati Policy issued by the Defendant.

**62.**     Upon information and belief, and at all times relevant hereto, the Cincinnati Policy was in full force and effect and all premium payments were current and provided liability insurance to AI Clearwater for the occurrence of May 31, 2014 which was the subject of the Underlying Lawsuit filed on June 9, 2015.

**63.**     The Underlying Lawsuit against AI Clearwater asserted claims allegedly caused by negligent acts or omissions in the performance of Subcontractor CBG's scope of work on the Project.

**64.**     The allegations of the Underlying Lawsuit triggered Defendant's duty to defend and indemnify under the Cincinnati Policy.

**65.**     In accordance with the relevant terms of the Cincinnati and HIIG Policies, Defendant was the primary, non-contributing insurer and HIIG was the excess insurer to AI Clearwater with respect to the allegations of the Underlying Lawsuit.

**66.**     As the sole primary insurer, Defendant had the primary duty to defend and indemnify AI Clearwater in the Underlying Lawsuit.

---

[5] Both the HIIG and Cincinnati Policies contain the same method of sharing: "[i]f all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first."  (*See* Ex. B at GA 101 12 04, Page 15 of 23, Section IV – 5.c.; Ex. C at CG 00 01 12 07, Page 12 of 16, Section IV – 4.c.)

3:18-cv-03148-MGL      Date Filed 11/20/18      Entry Number 1      Page 15 of 25

67.     Assuming that Defendant had operated in good faith and assumed the defense and indemnity of AI Clearwater in the Underlying Lawsuit, HIIG, as the excess insurer, could have only faced potential liability for any judgment or settlement that was both covered under the terms of the HIIG Policy and that was in excess of the coverage provided to AI Clearwater under the Cincinnati Policy.  (*See generally* Ex. C. at CG 00 01 12 07, Page 12 of 16, Section IV – 4.b.(3).)

68.     Accordingly, while HIIG had an interest in the discharge of its insured's liability in the Underlying Lawsuit, as the excess insurer it could have only been secondarily liable for the amounts actually paid to defend and indemnify AI Clearwater in the Underlying Lawsuit.

69.     However, because Defendant wrongfully refused to assume the defense and indemnity of AI Clearwater, HIIG—as the excess insurer with an interest in discharging its insured's liability—dropped down to defend and indemnify AI Clearwater pursuant to its duties of good faith and fair dealing.  (*See also* Ex. C at CG 00 01 12 07, Page 11 of 16, Section IV – 4.b.(2).)

70.     On or around May 25, 2017, $700,000 was paid by Plaintiff to settle the Underlying Lawsuit against AI Clearwater.

71.     Furthermore, all attorneys' fees and costs of AI Clearwater in the Underlying Lawsuit were and are still being paid by Plaintiff.

72.     Defendant was primarily liable for the amounts paid or being paid by Plaintiff to defend and/or settle the Underlying Lawsuit against AI Clearwater.

73.     Equity dictates that Defendant should now be required to reimburse Plaintiff for these amounts, for the additional attorneys' fees and costs incurred in bringing this action, and for other expenses, costs, and interest incurred by Plaintiff to date.

74.     No injustice will be done to Defendant by the allowance of this equity, as Defendant was lawfully and primarily obligated to pay the amounts actually paid by Plaintiff and Defendant had ample notice and opportunity to investigate and assume the defense and indemnity of its additional insured, AI Clearwater.  (*See, e.g.*, Exs. E-H.)

-15-

### FOR A THIRD CAUSE OF ACTION ON BEHALF OF HIIG *INDIVIDUALLY*
(*IN THE ALTERNATIVE TO EQUITABLE SUBROGATION*, CONTRIBUTION)

**75.** Plaintiff reaffirms and reiterates all of the allegations in the foregoing paragraphs as if fully repeated and incorporated herein.

**76.** Pursuant to the provisions of the Subcontractor Agreement and the Cincinnati Policy, AI Clearwater was an **"AUTOMATIC ADDITIONAL INSURED"** under the Cincinnati Policy issued by the Defendant.

**77.** Upon information and belief, and at all times relevant hereto, the Cincinnati Policy was in full force and effect and all premium payments were current and provided liability insurance to AI Clearwater for the occurrence of May 31, 2014 which was the subject of the Underlying Lawsuit filed on June 9, 2015.

**78.** The Underlying Lawsuit against AI Clearwater asserted claims allegedly caused by negligent acts or omissions in the performance of Subcontractor CBG's scope of work on the Project.

**79.** The allegations of the Underlying Lawsuit triggered Defendant's duty to defend and indemnify under the Cincinnati Policy.

**80.** To the extent that this Court finds that HIIG was not an excess insurer to AI Clearwater and that Defendant was not the sole primary insurer to AI Clearwater with respect to the allegations of the Underlying Lawsuit, then HIIG and Defendant were co-primary insurers of AI Clearwater who shared the duty to defend and indemnify AI Clearwater in the Underlying Lawsuit.

**81.** Thus, to the extent that this Court finds that HIIG was not an excess insurer of AI Clearwater and that Defendant was not the sole primary insurer to AI Clearwater with respect to the allegations of the Underlying Lawsuit, then the Cincinnati and HIIG Policies were concurrent and the amounts paid by Plaintiff for defense and indemnity should be shared between Cincinnati and HIIG. (*See* Ex. B at GA 101 12 04, Page 15 of 23, Section IV – 5.c.; Ex. C at CG 00 01 12 07, Page 12 of 16, Section IV – 4.c.)

**82.**    In spite of its duties to defend and indemnify AI Clearwater, Defendant wrongfully refused to defend and indemnify AI Clearwater in the Underlying Lawsuit.

**83.**    Therefore, to the extent that this Court finds that HIIG was not an excess insurer of AI Clearwater and that Defendant was not the sole primary insurer to AI Clearwater with respect to the allegations of the Underlying Lawsuit, then Defendant still owes Plaintiff its respective share of the sums paid by Plaintiff for the defense and indemnity of AI Clearwater in the Underlying Lawsuit, of the additional attorneys' fees and costs incurred in bringing this action, and of the other expenses, costs, and interest incurred by Plaintiff to date.

**FOR A FOURTH CAUSE OF ACTION ON BEHALF OF HIIG *IN ITS CAPACITY AS A TRANSFEREE/ASSIGNEE OF AI CLEARWATER***
(BAD FAITH)

**84.**    Plaintiff reaffirms and reiterates all of the allegations in the foregoing paragraphs as if fully repeated and incorporated herein.

**85.**    Defendant issued the Cincinnati Policy, a commercial general liability policy, which took effect on June 12, 2013.

**86.**    The Cincinnati Policy was a mutually binding contract of insurance between Defendant and AI Clearwater pursuant to the terms of its coverage, including the "**Automatic Additional Insured**" provisions of the CGL Broadened Endorsement, in conjunction with the additional insured requirements of the Subcontractor Agreement.

**87.**    Upon information and belief, and at all times relevant hereto, the Cincinnati Policy was in full force and effect and all premium payments were current and provided liability insurance to AI Clearwater for the occurrence of May 31, 2014 which was the subject of the Underlying Lawsuit filed on June 9, 2015.

**88.**    The Underlying Lawsuit against AI Clearwater asserted claims allegedly caused by negligent acts or omissions in the performance of Subcontractor CBG's scope of work on the Project.

**89.**    The allegations of the Underlying Lawsuit triggered Defendant's duty to defend and indemnify under the Cincinnati Policy.

90.     On November 15, 2015, Former Counsel for AI Clearwater formally sent a Tender Claim Letter seeking defense and coverage on behalf of AI Clearwater with respect to the Underlying Lawsuit.  (*See* Ex. E.)

91.     On November 27, 2015, in response to AI Clearwater's Tender Claim Letter, Defendant sent its Notice of Investigation to AI Clearwater indicating that it was investigating the claim for defense and coverage.  (*See* Ex. F.)

92.     On December 10, 2015, AI Clearwater sent Follow-Up Letter #1 to Defendant which provided documents requested by Defendant and sought a response to the claim for defense and indemnity coverage from Defendant.  (*See* Ex. G.)

93.     On February 11, 2016, AI Clearwater sent Follow-Up Letter #2 to Defendant again seeking a response to its claim for defense and indemnity coverage from Defendant by February 19, 2016.  (*See* Ex. H.)

94.     Despite AI Clearwater's repeated requests, Defendant did not respond to AI Clearwater by February 19, 2016.

95.     In fact, Defendant never responded to AI Clearwater's claim for defense and indemnity with reasons supporting its apparent refusal to accept the claim.

96.     Upon information and belief, Defendant never even evaluated AI Clearwater's claim for defense and coverage or AI Clearwater's status as an insured under the Cincinnati Policy.

97.     By refusing to accept or even respond to the claim of AI Clearwater, Defendant breached the implied terms of the Cincinnati Policy, including the implied covenant of good faith and fair dealing, and is indebted to Plaintiff—as a transferee/assignee of AI Clearwater—for all amounts paid by or on behalf of AI Clearwater.

98.     Defendant's refusal to accept AI Clearwater's claim resulted from Defendant's bad faith claims handling and an unreasonable, baseless, and unsupported denial of coverage in breach of the implied covenant of good faith and fair dealing arising on the contract.

99.     As a result of Defendant's constructive denial of additional insured coverage to AI Clearwater, all attorneys' fees and costs of AI Clearwater in the Underlying Lawsuit were and are still being paid by or on behalf of AI Clearwater.

100.     As a further result of Defendant's constructive denial of additional insured coverage to AI Clearwater, on or around May 25, 2017, $700,000 was paid by or on behalf of AI Clearwater to settle the Underlying Lawsuit against it.

101.     As a further result of Defendant's constructive denial of additional insured coverage to AI Clearwater, attorneys' fees and costs have been and will continue to be incurred in investigating and filing the current action to recover sums paid by or on behalf of AI Clearwater that lawfully should have been paid by Defendant.

102.     Plaintiff is informed and believes that Defendant has acted negligently, recklessly, and willfully, and in bad faith and wantonness in:

    a.  Refusing to honor the claim submitted by AI Clearwater after reasonable proof of the claim, including after all requested documentation was sent;

    b.  Failing and refusing to defend AI Clearwater in the Underlying Lawsuit;

    c.  Failing to fully investigate and evaluate the claim to determine whether or not the claim came within the coverage afforded by Defendant's policy;

    d.  Failing to communicate to AI Clearwater any reasonable justification for refusing to honor the claim;

    e.  Failing to attempt in good faith to effect a fair, prompt, and equitable settlement on behalf of AI Clearwater in the Underlying Lawsuit;

    f.  Failing to otherwise indemnify AI Clearwater in the Underlying Lawsuit;

    g.  Favoring its Named Insured, Subcontractor CBG, over the interests of its Additional Insured, AI Clearwater;

    h.  Forcing AI Clearwater to file independent theories of recovery against Subcontractor CBG which resulted in potential exposure to AI Clearwater in the form of counterclaims filed by Subcontractor CBG in the Underlying Lawsuit;

i.   Refusing to respond with an official denial of AI Clearwater's claims in spite of repeated requests for a decision on its claim;

j.   Forcing AI Clearwater to defend and settle the Underlying Lawsuit without the benefits owed to it under its mutually binding contract of insurance with Defendant, despite the fact that Defendant lawfully should have assumed the defense and indemnification of AI Clearwater;

k.   Compelling the filing of this lawsuit seeking to recover amounts paid by or on behalf of AI Clearwater to defend and settle the Underlying Lawsuit;

l.   Through the course of dealings between AI Clearwater and Defendant, in acting negligently, in bad faith, and in reckless disregard of the rights of AI Clearwater as an additional insured.

103.   As a proximate, direct, foreseeable result, and natural consequence of the negligence, bad faith, recklessness and wantonness, Plaintiff—as a transferee/assignee of AI Clearwater—has suffered damages; including, but not limited to, the attorneys' fees incurred in defending itself in the Underlying Lawsuit, the amounts paid by or on AI Clearwater's behalf to settle the Underlying Lawsuit, the distress created by the delay and bad faith refusal of Defendant to defend and indemnify AI Clearwater, the costs of hiring legal counsel to pursue the additional insured claim, the costs and expenses associated with bringing this action, and the loss of interest on the money owed by Defendant due to their refusal to honor the claim.

104.   Therefore, Plaintiff is informed and believes that it is entitled to judgment against Defendant for the loss and damages sustained in a sum to be determined by the Court for costs, expenses, attorneys' fees—including, but not limited to, under S.C. Code § 38-59-40, interests, as well as both actual and, as a result of the willful, wanton, and/or reckless disregard of rights, punitive damages.

**FOR A FIFTH CAUSE OF ACTION ON BEHALF OF HIIG *IN ITS CAPACITY AS A TRANSFEREE/ASSIGNEE OF AI CLEARWATER***
(BREACH OF CONTRACT)

**105.**     Plaintiff reaffirms and reiterates all of the allegations in the foregoing paragraphs as if fully repeated and incorporated herein.

**106.**     Defendant issued the Cincinnati Policy, a commercial general liability policy, which took effect on June 12, 2013.

**107.**     The Cincinnati Policy was a mutually binding contract of insurance between Defendant and AI Clearwater pursuant to the terms of its coverage, including the "**Automatic Additional Insured**" provisions of the CGL Broadened Endorsement, in conjunction with the additional insured requirements of the Subcontractor Agreement.

**108.**     Upon information and belief, and at all time relevant hereto, the Cincinnati Policy was in full force and effect and all premium payments were current such that the Policy provided primary liability insurance to AI Clearwater for the alleged occurrence of May 31, 2014 which was the subject of the Underlying Lawsuit filed on June 9, 2015.

**109.**     The Underlying Lawsuit against AI Clearwater asserted claims allegedly caused by negligent acts or omissions in the performance of Subcontractor CBG's scope of work.

**110.**     The allegations of the Underlying Lawsuit triggered Defendant's duty to defend and indemnify under the Cincinnati Policy.

**111.**     On November 15, 2015, Former Counsel for AI Clearwater formally sent a Tender Claim Letter seeking defense and coverage on behalf of AI Clearwater with respect to the Underlying Lawsuit.  (*See* Ex. E.)

**112.**     On November 27, 2015, in response to AI Clearwater's Tender Claim Letter, Defendant sent its Notice of Investigation to AI Clearwater indicating that it was investigating the claim for defense and coverage.  (*See* Ex. F.)

**113.**     On December 10, 2015, AI Clearwater sent Follow-Up Letter #1 to Defendant which provided documents requested by Defendant and sought a response to the claim for defense and indemnity coverage from Defendant.  (*See* Ex. G.)

114.     On February 11, 2016, AI Clearwater sent Follow-Up Letter #2 to Defendant again seeking a response to its claim for defense and indemnity coverage from Defendant by February 19, 2016.  (*See* Ex. H.)

115.     Despite AI Clearwater's repeated requests, Defendant did not respond to AI Clearwater by February 19, 2016; thereby constructively denying AI Clearwater's claim for defense and coverage and breaching the Cincinnati Policy.

116.     In fact, Defendant never responded to AI Clearwater's claim for defense and indemnity with reasons supporting its refusal to accept the claim.

117.     Upon information and belief, Defendant never even evaluated AI Clearwater's claim for defense and coverage or AI Clearwater's status as an insured under the Cincinnati Policy.

118.     By refusing to accept or even respond to the claim of AI Clearwater, Defendant breached the implied and express terms of the Cincinnati Policy, including the implied covenant of good faith and fair dealing and the express duties to defend and indemnify, and is indebted to Plaintiff—as a transferee/assignee of AI Clearwater—for all amounts paid by or on behalf of AI Clearwater.

119.     Defendant's refusal to accept AI Clearwater's claim resulted from Defendant's bad faith claims handling, unjustified failure to perform under the contract, and an unreasonable, baseless, and unsupported denial of coverage in breach of the implied covenant of good faith and fair dealing arising on the contract.

120.     As a result of Defendant's constructive denial of additional insured coverage to AI Clearwater, all attorneys' fees and costs of AI Clearwater in the Underlying Lawsuit were and are still being paid by or on behalf of AI Clearwater.

121.     As a further result of Defendant's constructive denial of additional insured coverage to AI Clearwater, on or around May 25, 2017, $700,000 was paid by or on behalf of AI Clearwater to settle the Underlying Lawsuit against it.

122.    As a further result of Defendant's constructive denial of additional insured coverage to AI Clearwater, attorneys' fees and costs have been and will continue to be incurred in investigating and filing the current action to recover sums paid by or on behalf of AI Clearwater that lawfully should have been paid by Defendant.

123.    As a proximate, direct, foreseeable result, and natural consequence of Defendant's bad faith breach of contract, Plaintiff—as a transferee/assignee of AI Clearwater—has suffered damages; including, but not limited to, the attorneys' fees incurred in defending the Underlying Lawsuit, the amounts paid by or on AI Clearwater's behalf to settle the Underlying Lawsuit, the distress created by the delay and bad faith refusal of Defendant to defend and indemnify AI Clearwater, the costs of hiring legal counsel to pursue the additional insured claim, the costs and expenses associated with bringing this action, and the loss of interest on the money owed by Defendant due to their refusal to honor the claim.

124.    Therefore, Plaintiff is informed and believes that it is entitled to judgment against Defendant for the loss and damages sustained in a sum to be determined by the Court for costs, expenses, attorneys' fees—including, but not limited to, under S.C. Code § 38-59-40, interests, as well as both actual and, as a result of the willful, wanton, and/or reckless disregard of rights, punitive damages.

**WHEREFORE**, Plaintiff prays that this Honorable Court grant them judgment as follows:

a.    For the First Cause of Action by Plaintiff:

1.    for a declaration finding that Defendant was lawfully obligated to defend and indemnify AI Clearwater and judgment finding that Defendant must reimburse Plaintiff for the monies paid by Plaintiff to settle the Underlying Lawsuit against AI Clearwater, for reasonable attorneys' fees that have been and are being incurred on behalf of AI Clearwater in the Underlying Lawsuit and in bringing this action, and for other costs, expenses, and pre-judgment interest incurred;

2.    *or, in the alternative,* for a judgment against Defendant for its respective share of the monies paid by Plaintiff to settle the Underlying Lawsuit against AI Clearwater, for its respective share of reasonable attorneys'

fees that have been and are being incurred on behalf of AI Clearwater in the Underlying Lawsuit and in bringing this action, and for other costs, expenses, and pre-judgment interest incurred;

b.    For the Second Cause of Action by HIIG, *individually*, against Defendant, for a judgment against Defendant for the monies paid by HIIG to settle the Underlying Lawsuit against AI Clearwater, for reasonable attorneys' fees that have been and are being incurred on behalf of AI Clearwater in the Underlying Lawsuit and in bringing this action, and for other costs, expenses, and pre-judgment interest incurred;

c.    For the Third Cause of Action by HIIG, *individually*, against Defendant, for a judgment against Defendant for its respective share of the monies paid by HIIG to settle the Underlying Lawsuit against AI Clearwater, for its respective share of reasonable attorneys' fees that have been and are being incurred on behalf of AI Clearwater in the Underlying Lawsuit and in bringing this action, and for other costs, expenses, and pre-judgment interest incurred;

d.    For the Fourth Cause of Action by HIIG, *as a transferee/assignee of AI Clearwater*, against Defendant, for a judgment against Defendant for the monies paid by or on behalf of AI Clearwater to settle the Underlying Lawsuit against AI Clearwater, for reasonable attorneys' fees that have been and are being incurred on behalf of AI Clearwater in the Underlying Lawsuit and in bringing this action, for other actual and consequential damages, and punitive damages in an amount to be determined by the Court and/or a jury, and for other costs, expenses, and pre-judgment interest incurred;

e.    For the Fifth Cause of Action by HIIG, *as a transferee/assignee of AI Clearwater*, against Defendant, for a judgment against Defendant for the monies paid by or on behalf of AI Clearwater to settle the Underlying Lawsuit against AI Clearwater, for reasonable attorneys' fees that have been and are being incurred on behalf of AI Clearwater in the Underlying Lawsuit and in bringing this action, for other actual and consequential damages, and punitive damages in an amount to be determined by the Court and/or a jury, and for other costs, expenses, and pre-judgment interest incurred.

f.     Additionally, for all Causes of Action, such other and further relief as the Court deems just and proper.

This 20th day of November, 2018.

Respectfully submitted,

CARLOCK, COPELAND & STAIR LLP

S/Kathy A. Carlsten_____

40 Calhoun Street, Suite 400          Kathy A. Carlsten, Esq.
Charleston, SC  29401                 Federal Bar No.:  9127
(843) 727-0307

Clinton T. Magill, Esq.
Federal Bar No.:  12459
**_Counsel for Plaintiff_**